1

2

3           UNITED STATES DISTRICT COURT

4          EASTERN DISTRICT OF WASHINGTON

5   SHIELA BOUDREAU,

6          Plaintiff,                     NO.  CV-12-03092-JLQ

7   v.                                    MEMORANDUM OPINION AND
                                          ORDER RE:  MOTIONS FOR
8   CAROLYN W. COLVIN,                    SUMMARY JUDGMENT
    Commissioner of Social Security,
9
           Defendant.
10

11         BEFORE THE COURT are Cross-Motions for Summary Judgment.  (ECF

12   NO. 22 & 26).  Plaintiff is represented by attorney **James Tree**.  Defendant is

13   represented by Assistant United States Attorney **Pamela J. DeRusha** and Special

14   Assistant United States Attorney **Jeffrey R. McClain**.  This matter was previously

15   before Magistrate Judge Imbrogno.  It was reassigned to the undersigned for all

16   further proceedings on October 1, 2013.  The court has reviewed the

17   administrative record and the parties' briefs.  The case was submitted for decision

18   without oral argument on October 7, 2013.

19         This court's role on review of the decision of the Administrative Law Judge

20   (ALJ) is limited.  The court reviews that decision to determine if it was supported

21   by substantial evidence and contains a correct application of the law.  *Valentine v.*

22   *Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  This court is

23   obligated to affirm the ALJ's findings if they are supported by substantial

24   evidence and the reasonable inferences to be drawn therefrom.  *Molina v. Astrue*,

25   674 F.3d 1104, 1110-11 (9th Cir. 2012).  Substantial evidence is such relevant

26   evidence that a reasonable mind might accept as adequate to support the

27   conclusion.

28

ORDER - 1

## I.  JURISDICTION

In March 2009, Plaintiff/Claimant Shiela M. Boudreau, then 30 years of age, filed an application for disability insurance benefits.  She alleged a disability onset date of June 11, 2008, which was the date of denial of a prior application of benefits, for which she did not seek reconsideration. (ECF No. 11, p. 103)[1]. Plaintiff's March 2009 application was denied on June 8, 2009, and she did seek reconsideration and requested a hearing.  Plaintiff alleged at the time of her March 2009 application an inability to work due to depression and post-traumatic stress disorder ("PTSD").  A hearing was held before Administrative Law Judge Marie Palachuk on February 25, 2011. (Transcript at ECF No. 11-2 pages 53-99).  The ALJ issued a decision denying benefits on March 15, 2011. (ECF No. 11-2, p. 20-34).  Plaintiff filed a request for review with the Appeals Council, which was denied on May 22, 2012. (ECF No. 11, p. 1).  The decision of the ALJ became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).

## II.  SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other

---

[1]An unappealed denial of an application for disability benefits operates as res judicata as to the finding of non-disability through the date of the prior decision. See *Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2009).

ORDER - 2

substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987):

Step 1: Is the claimant engaged in substantial gainful activities?  20 C.F.R. §§ 404.1520(b), 416.920(b).  If she is, benefits are denied.  If she is not, the decision maker proceeds to step two.

Step 2: Does the claimant have a medically severe impairment or combination of impairments?  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity?  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past?  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant is able to perform her previous work, she is not disabled.  If the claimant cannot perform this work, the inquiry proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of her age, education and work experience?  20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the Plaintiff to establish a prima facie

case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### III. STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the [Commissioner] applied the proper legal standards." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). This court may set aside a denial of benefits only if the basis for denial is not supported by substantial evidence or if it is based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is the role of the trier of fact, not this court, to resolve conflicts in the evidence. *Richardson*, 402 U.S. at 400. If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Thomas*, 278 F.3d at 954 (9th Cir. 2002).

## IV.  STATEMENT OF FACTS

The facts are contained in the medical records, administrative transcript, and the ALJ's decision, and are only briefly summarized here.  At the time the ALJ issued her decision, Plaintiff was 32 years old.  Plaintiff has a high school education.  Plaintiff's primary work history was in the service industry.  She testified concerning "dishwashing jobs or working as a prep cook", "waitressing hostessing job", and as a "librarian's aide". (ECF No. 11, p. 79).

Plaintiff has a long history of mental health issues.  She attributes her depression and PTSD at least partially to an experience where she was sexually assaulted at age 11.  Plaintiff had a child at age 14, and another child at age 19.  Neither of these children were living with her at the time of the administrative hearing.  Plaintiff has a fairly lengthy treatment record, and the records of her health care providers are not entirely consistent as to the extent of Plaintiff's impairments.  The medical record will be discussed at greater length below.

## V.  COMMISSIONER'S FINDINGS

The ALJ found at **Step 1** that Plaintiff had not engaged in substantial gainful activity since June 11, 2008, the alleged onset date.

At **Step 2**, the ALJ found the medical evidence established the following severe impairments: major depressive disorder; PTSD, and personality disorder with not otherwise specified cluster "B" and dependent features (ECF No. 11-2, p. 22).

At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).  The ALJ considered the "paragraph B criteria" and determined the following: 1) as to activities of daily living Plaintiff had only mild restriction; 2) in social functioning Plaintiff had moderate difficulties; 3) with regard to concentration, persistence, and pace, the Plaintiff had mild to moderate difficulty; and 4) the ALJ

found no periods of decompensation. (ECF No. 11-2, p. 23).

At **Step 4**, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and found that Plaintiff had no exertional limitations, but did have psychological limitations. (*Id*. at 24). The ALJ considered Plaintiff's past relevant work as a kitchen helper, library helper, and waitress and found that Plaintiff would be unable to return to such work due to her limitation of interaction with the public.

At **Step 5** the ALJ concluded, relying on the testimony of a vocational expert, that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Specifically, the vocational expert identified the jobs of housekeeper/cleaner, laundry worker, and pricer/marker. (ECF No. 11-2, p. 33).

### VI. ISSUES

Plaintiff's briefing identifies three issues for review: 1) did the ALJ err in improperly rejecting the opinions of claimant's treating and examining providers; 2) did the ALJ err in rejecting claimant's subjective complaints; and 3) did the ALJ err at Step 5? (ECF No. 22, p. 10).

### VII. DISCUSSION

#### A. <u>Did the ALJ err in Rejecting the Opinion of Plaintiff's Treating and Examining Providers?</u>

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Williams, Ms. Petre, and Mr. Eberhart. (Id. at 12). In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: 1) treating physicians, who actually treat the claimant; 2) examining physicians, who examine but do not treat the claimant; and 3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to the opinion of the treating physician than to the opinions of non-treating physicians. *Id.* If a treating physician's opinion is uncontradicted, it may be rejected only for

clear and convincing reasons, and if it is contradicted, it may be rejected for specific and legitimate reasons supported by substantial evidence in the record. *Id.* Generally more weight is given to the opinion of an examining source than to a non-examining source. *Id.* at 830-31. An ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc.Sec. Admin*, 359 F.3d 1190, 1195 (9th Cir. 2004) <u>see also</u> *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Although Plaintiff frames the issue as though the ALJ rejected the opinion of treating physicians, neither Williams, Petre, or Eberhart are treating physicians. Dr. Williams was an examining physician who conducted a consultative exam on May 30, 2008, before the alleged disability on-set date. (ECF No. 11, p. 299). Dr. Williams assessed Plaintiff as "moderately depressed." (*Id*. at 302). Dr. Williams stated that she was "most likely...unemployable at this point, although conceivably with sufficient structure and supervision she could maintain basic employment." (*Id*. at 303). Dr. Moore, a clinical psychologist, after reviewing Plaintiff's medical records, testified at the hearing before the ALJ. The ALJ observed that Dr. Moore disagreed with Dr. Williams' assessment that Plaintiff had a "low functioning" personality disorder, and in Dr. Moore's opinion Plaintiff "is well above that lower end of the spectrum, and probably even well past the middle part of it towards the high functioning end." (ECF No. 11-2, p. 75 & 30). The ALJ also cited to Dr. Moore's opinion that there was a pattern of "learned helplessness" and "enabling." (*Id*. at p. 67 & 30). Dr. Moore found that Plaintiff had worked hard and been consistent in her therapy, but that there was also a "lingering issue with motivation." (*Id*. at 68). The ALJ found Dr. Moore's assessment to be more convincing than Dr. Williams.

The ALJ noted that Dr. Williams evaluation was conducted almost one year prior to Plainntiff's application for disability, and was just a snapshot of her condition on that date (which was before the alleged date of disability). (ECF No. 11-2, p. 30); See also *Carmickle v. Commissioner*, 533 F.3d 1155, 1165 (9th Cir. 2008)("Medical opinions that predate the alleged onset of disability are of limited relevance."). The ALJ noted that Dr. Williams had not reviewed Plaintiff's medical records for more than two years preceding the February 2011 administrative hearing. The ALJ has provided clear and convincing reasons for according Dr. William's assessment less weight.

Additionally, a conclusion by a health care provider that an individual cannot work is not binding on the ALJ. See 20 C.F.R. § 404.1527(d)(1)("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Here, the ALJ was not presented with a firm conclusion from Dr. Williams that Plaintiff could not work. Rather, Dr. Williams in May 2008, stated it was "likely" she could not work "at this point", but that she may with structure and supervision be able to maintain basic employment.

Ms. Petre and Mr. Eberhart are therapists, and as Plaintiff concedes they lack doctorate level education and are not "acceptable medical sources". The ALJ discussed their opinions at some length. The ALJ noted that they were not acceptable medical sources, but that their opinions are entitled to some weight. (ECF No. 11-2, p. 31). "[O]nly licensed physicians and certain other qualified specialists are considered acceptable medical sources." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). In fact, Petre, M.Ed., and Eberhart, LCSW, are both "other source" evidence. See for example *Lassley v. Apfel*, 243 F.3d 548 (9th Cir. 2000)(therapist and licensed medical counselor was "'other source', whose opinion the ALJ may give less weight than that of an acceptable medical source."); *Fisher v. Astrue*, 429 Fed.Appx. 649 (9th Cir. 2011)(licensed mental health

counselor not an acceptable medical source).    The ALJ found their check-box DSHS evaluation forms to be inconsistent with their treatment notes.  Check box forms may be accorded less weight.  <u>See</u> *Bell-Shier v. Astrue*, 312 Fed.Appx. 45, 48 n.3 (9th Cir. 2009)("Medical reports presented in such summary check-box format without additional explanation are not entitled to significant weight."). Further, the ALJ noted that both Petre and Eberhart believed that claimant could adjust to working and recommended claimant participate in job preparedness classes.  Further, Ms. Petre found claimant to be "highly intelligent in many areas." (ECF No. 11-2, p. 32-33).  The ALJ further found that Ms. Petre "never conducted any cognitive testing to establish deficits in attention and concentration, nor did she document what other basis she had for the opined limitations.  Thus, her opinion is not supported by any other medical evidence of record or even her own clinical exams and testing." (Id. at 31).

The ALJ need only give germane reasons for discounting the opinion of a non-acceptable medical source. *Fleming v. Astrue*, 303 Fed.Appx. 546, 548 (9th Cir. 2008)("An ALJ may discount opinion sources that are not acceptable medical sources by providing reasons germane to that source for doing so.  A counselor is not an acceptable medical source.").    The ALJ has given specific and legitimate reasons.   Plaintiff has not demonstrated the ALJ erred, but rather just argues for a re-weighing of the evidence.  It is the role of the ALJ to assess credibility and weigh the evidence, "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The ALJ's determination is supported by substantial evidence.  When Plaintiff saw Dr. Conklu, in March 2007, she was found to be moderately depressed, with no anxiety. (ECF No. 11, p. 257). She was further assessed as having good insight and judgment and possessing normal intellectual functioning. When she was assessed by Dawn Petre, LMHC in January 2008, Petre stated the

estimated duration of Plaintiff's functional impairments would be only 3 to 6 months.  In June 2008, Dr. Eugene Kester found Plaintiff had only mild and moderate limitations.  He disagreed that she was unable to work and found her to be "quite verbal and articulate" with good judgment. (ECF No. 11, p. 317).  In October 2008, health care provider Mara Fusfield wrote that Plaintiff "has much interaction with other people so it is not like she spends a lot of time alone" (ECF No. 11, p. 330), which contradicts Plaintiff's claims of social isolation.  At a mental health assessment at Central Washington Comprehensive Mental Health in April 2009, the therapist opined that Plaintiff "would benefit from the work-ordered day." (*Id.* at 382).  Regan Eberhart, MSW, when he examined Plaintiff in December 2009 indicated that vocational services or training would minimize or eliminate barriers to employment. (*Id.* at 441).  At a psychological examination conducted by Cindy Gregory in January 2009, Ms. Gregory indicated that Plaintiff's functional limitations were expected to last only six months to one year. (*Id*. at 476).  In February 2011, just two weeks before the administrative hearing, Regan Eberhart conducted a Mental Residual Functional Capacity Assessment which looked at 20 different mental activities/abilities covering the areas of understanding and memory; sustained concentration and persistence; social interaction; and adaptation. (ECF No. 11, p. 574-576).  Eberhart found that Plaintiff was "not significantly limited" in 10 of the categories, "mildly limited" in 9, and moderately limited in 1 category.  Plaintiff was not found to be markedly or severely limited in any category. *Id.*  Interestingly, Eberhart's psychological evaluation of December 2010, did find more moderate and some  marked limitations. (*Id*. at 581).  He did note an "overall decrease in symptoms" and that Plaintiff had been very consistent in attendance and participation. (*Id*.).  Whether Eberhart's two evaluations are inconsistent, and the weight to be accorded, are determinations for the ALJ.  The ALJ's non-disability determination is supported by substantial evidence.

B.  **Did the ALJ Err in Rejecting Plaintiff's Subjective Complaints**?

The ALJ found that Claimant's medically determinable impairments could be expected to cause the alleged symptoms, but that Claimant's testimony concerning the intensity, persistence, and limiting effects of the symptoms was not credible. (ECF No. 11-2, p. 25).  The ALJ found her "subjective complaints are only partially credible inasmuch as they are significantly in excess of the reported levels of activities of daily living and level of ability noted throughout the ongoing counseling records." (*Id*. at 25).  Plaintiff argues that these are insufficient reasons and that her daily activities do not demonstrate that she is capable of working.

In deciding whether to accept a claimant's subjective symptom testimony, the ALJ "must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  The *Cotton* analysis comes from the Ninth Circuit's opinion in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), and thereunder the claimant must: 1) produce objective medical evidence of an impairment or impairments; and 2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-82.  If a claimant meets the *Cotton* test, then the ALJ may reject the claimant's testimony regarding the severity of symptoms only based on specific, clear, and convincing reasons. *Id*. at 1284.

The fact that Plaintiff can partake in daily activities is not determinative of disability. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).  However, the ability to participate in such activities is relevant to Plaintiff's credibility to the extent that the level of activity is in fact inconsistent with the claimed limitations. See also *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990)(claimant's ability "to take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries...may be seen as inconsistent with the presence of a

condition which would preclude all work activity.")

The ALJ discounted Plaintiff's credibility because Plaintiff cited reasons other than her alleged disability for the termination of employment, such as conflicts with co-workers, disability, and city funding. (ECF No. 11-2, p. 28). In her Reply brief, Plaintiff states that "inconsistencies in work history" may be explained by there being more than one reason she stopped working her prior jobs. (ECF No. 27, p. 3). The evaluation of inconsistencies and consideration of reasons for Plaintiff's termination of employment goes to the weight of the evidence and is a determination for the ALJ. It is the role of the ALJ to assess credibility and weigh the evidence, "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The ALJ also noted that on occasion Plaintiff had not taken prescribed medication. Plaintiff claims she failed to take "merely sleep medication" and this was not sufficient reason to discredit her testimony. (ECF No. 27, p. 4). Evidence that Plaintiff was not taking medication, which had proved effective, can stand as a convincing reason to question her credibility. See *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2008)("If a claimant complains about disabling pain but fails to seek treatment, or **fails to follow a prescribed treatment**, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.")(emphasis supplied).

The ALJ gave specific, clear, and convincing reasons to support her evaluation of Plaintiff's subjective complaints and her finding that Plaintiff was only partially credible.

### C. **Did the ALJ Err at Step 5?**

Plaintiff argues that the Commissioner failed to meet his burden at Step 5 of identifying specific jobs, available in significant numbers, that Plaintiff could

perform. (ECF No. 22, p. 19).  The ALJ's decision does identify specific jobs, in significant numbers, that the vocational expert identified Plaintiff could perform. (ECF No. 11-2, p. 33).  Plaintiff's argument is that the vocational expert's testimony was based upon an incomplete hypothetical.  The ALJ's hypothetical was based on Plaintiff's residual functional capacity ("RFC"), and the RFC determination is supported by substantial evidence.  An ALJ is required to include only those limitations she finds supported by substantial evidence in her hypothetical question. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001). The ALJ did not err in framing the hypothetical questions or relying on the vocational expert's testimony.

## VIII. CONCLUSION

The Commissioner's and ALJ's decision is supported by substantial evidence in the record and is based on proper legal standards. This court must therefor affirm that decision.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

**IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 22) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 26) is **GRANTED.**

3.  The Clerk is directed to enter Judgment dismissing the Complaint and the claims therein with prejudice.

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order, enter Judgment as directed above, and close this file.

DATED this 17th  day of October, 2013.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER – 13